AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of Massachusetts

| | |
|---|---|
| United States of America<br>v.<br><br>Jose Alberto Tejeda Turbi, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| _Defendant(s)_ | Case No.<br><br>14-mj- 7097 JCB |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___December 2012 to March 2013___ in the county of _____ in the

_____ District of ___Massachusetts___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §846 | conspiracy to distribute heroin |

This criminal complaint is based on these facts:

See attached Affidavit of FBI Special Agent Lise Baillargeon

☑ Continued on the attached sheet.

_____
Complainant's signature

Lise Baillargeon, FBI Special Agent
_____
Printed name and title

Sworn to before me and signed in my presence.

Date: ___05/30/2014___

_____
Judge's signature

City and state: ___Boston, Massachusetts___    JENNIFER C. BOAL, U.S. MAGISTRATE JUDGE
_____
Printed name and title

## AFFIDAVIT SPECIAL AGENT LISE BAILLARGEON

I, Special Agent Lise Baillargeon, being duly sworn, depose and state as follows:

1.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been an FBI Special Agent since 2009, and I have primarily been assigned to investigate drug trafficking since 2011. Prior to my appointment as a Special Agent, I was employed for three years as an Intelligence Analyst with the FBI, during which time I conducted analysis, researched, and wrote reports in support of FBI white collar and cyber-crime investigations.

2.      Since becoming a Special Agent with the FBI, I have participated in investigations of narcotics trafficking and money laundering, and among other things, have conducted and participated in physical surveillance, the execution of search warrants, debriefings of informants, and have been the affiant in a Title III investigation. Through my training, education, and experience, I am familiar with the methods of operation of narcotics traffickers, including the distribution, storage, and transportation of narcotics and drug proceeds.

3.      Based on my training and experience, I am also aware that drug traffickers commonly use cellular telephones to communicate about and further their drug trafficking activities, but are aware of law enforcement's use of electronic surveillance, and thus frequently change cellular telephone numbers, use multiple cellular phones at the same time as well as prepaid cellular phones (where the subscriber of the phone is

not required to provide personal identifying information) in an effort to thwart law enforcement's use of electronic surveillance. I am also aware that drug traffickers often speak in vague, guarded, or coded language when discussing their illegal business in an effort to further prevent detection and often use text messages in lieu of phone calls to avoid speaking over the telephone.

4.      I am submitting this affidavit in support of an application for a criminal complaint charging Jose Alberto TEJEDA TURBI, a/k/a "Chillin," (herein, "TEJEDA"), ██████████████████████████████ with conspiracy to distribute heroin, in violation of 21 U.S.C. §846.

5.      As a result of my personal participation in this investigation, through my conversations with other law enforcement officers, upon information that I have received from a variety of other sources, including public records, and my analysis of reports prepared by other officers, I am familiar with all aspects of this investigation. This affidavit is intended to show only that there is sufficient probable cause for the requested complaint and arrest warrants and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

6.      In 2012, an FBI Cooperating Witness ("CW1") informed agents he could purchase heroin from TEJEDA, whom CW1 knew by the name "Chillin." Between December 6, 2012 and March 15, 2013, at the direction of FBI agents, CW1 made a number of consensually recorded calls to TEJEDA arranging to purchase heroin.

7.      Based in part on these recorded calls and heroin purchases, on February 22, 2013 and March 25, 2013, the Honorable Timothy S. Hillman signed Orders

2

authorizing the interception of wire and electronic communications over two phones used by TEJEDA. TEJEDA was intercepted negotiating heroin purchases from his suppliers and sales with customers, attempting to collect drug debts, and discussing his drug business with criminal associates.

8.      Between December 12, 2012 and March 15, 2013, CW1 made six controlled purchases of heroin from TEJEDA. Each purchase was for 50 grams and TEJEDA always sold the drugs on consignment. Each of the six purchases was preceded by consensually recorded calls between CW1 and TEJEDA. TEJEDA either delivered the heroin himself or sent ███████████████ to make the delivery. All of the purchases took place inside CW1's apartment. All of the purchases were audio and video recorded and monitored by agents who were hiding inside CW1's apartment during the purchases. The following is a summary of some of the purchases.

9.      On December 6, 2012, CW1 placed a consensually recorded call to TEJEDA and told TEJEDA he had a friend who wanted to purchase 50 grams of heroin. TEJEDA agreed to sell the 50 grams on consignment for $2,750. On December 12, 2012, CW1 called TEJEDA to arrange for the delivery. The call was monitored and recorded.

10.     Officers set up surveillance in the area of CW1's residence prior to TEJEDA's arrival, and officers hid in a bedroom inside CW1's apartment. At approximately 6:10 p.m., surveillance officers observed ███████████████ ███████████████ being driven by a Hispanic male, who was subsequently identified as ████████, pull over curb side and park the vehicle about one block away from CW1's apartment. ████████ got out of the vehicle and

3

entered CW1's apartment.   Once inside, ███████ handed CW1 a large bag wrapped tightly with green plastic wrap.   After a short conversation, ███████ left the apartment, returned to his vehicle, and drove away.   The suspected heroin field tested positive for opiates.

11.     Agents confirmed that the ███████ was registered to ███ ████████████████████████████████████████████████. CW1 was shown an RMV photograph of ███████, and he positively identified ███████ as the person who delivered the heroin on December 12, 2012.   Officers went to ████████████████████████████████, and observed the name ███████████████   In addition, ███████ is clearly portrayed in the video footage.

12.     On December 20, 2012, CW1 placed a consensually recorded call to TEJEDA to arrange a meeting so that CW1 could make a partial payment to TEJEDA for the heroin he had purchased on December 12, 2012.   TEJEDA and CW1 agreed to meet the following day at CW1's apartment so that CW1 could pay TEJEDA.   On December 21, 2012, CW1 placed a consensually recorded call to TEJEDA, and TEJEDA informed CW1 that he would be arriving at CW1's apartment soon.

13.     At approximately 3:11 p.m. on December 21, 2012, surveillance officers observed ███████████████████ arrive in the vicinity of CW1's apartment. Moments after arriving, TEJEDA called CW1 and told him that "the other guy" would be at the back door.   ███████ then got out of the ███████ and entered CW1's apartment while TEJEDA remained in the vehicle.   The video surveillance captured CW1 handing ███████ money and ███████ handing CW1 a large bag

4

wrapped in green plastic. Surveillance officers observed ███████ return to his vehicle and drive away. CW1 gave the green plastic bag to officers, who were hiding in the apartment during the transaction. The substance field tested positive for opiates.

14.     On March 15, 2013, CW1 called TEJEDA to set up a meeting so CW1 could purchase an additional 50 grams of heroin and pay for heroin he had previously purchased on consignment. CW1 told TEJEDA he wanted to introduce TEJEDA to his friend, CW2. CW1 told TEJEDA CW2 was a heroin dealer who wanted to purchase directly from TEJEDA. After a series of recorded calls, TEJEDA told CW1 he would be arriving in "ten minutes." Instead, TEJEDA sent ██████ to CW1's apartment. ██████ handed CW1 a package, which the DEA Laboratory confirmed contained 48.3 grams of heroin. The video surveillance captured the transaction. When ██████ asked for payment, CW1 said he needed more time. In response, ██████ picked up his phone and appeared to send a text message. Shortly thereafter, TEJEDA called CW1 and agreed that CW1 could pay the following week. TEJEDA directed CW1 to give ██████ money for a taxi, and CW1 agreed. After ██████ left, CW1 gave the heroin to agents who were hiding in a bedroom.

15.     ██████ was also captured on video delivering heroin to CW1 on January 8, 2013. After a number of recorded calls between CW1 and TEJEDA, TEJEDA told CW1 he was sending his "little friend" to collect payment from CW1 for heroin CW1 had previously purchased, and to deliver more heroin. The transaction was audio and video recorded. The DEA Laboratory confirmed the substance ██████ delivered to CW1 contained heroin.

16.     In addition, TEJEDA delivered heroin directly to CW1 on January 25,

5

2013 (DEA Laboratory confirmed the net weight was 48.4 grams) and February 15, 2013 (DEA Laboratory confirmed the net weight was 49.5 grams). TEJEDA collected drug payments from CW1 on February 7, 15, and 26, 2013. All of these deliveries and collections were audio and video recorded.

17.     On March 10, 2014, agents instructed CW1 to reestablish contact with TEJEDA. During the consensually recorded call, CW1 asked if TEJEDA could front him "25" and TEJEDA agreed. TEJEDA explained that he was working outside of Boston. TEJEDA expressed concern about "surveillance" always being around CW1's old apartment. TEJEDA agreed to front CW1 heroin and talked about sending the same courier whom he had previously sent to CW1.

18.     Based on the above facts, I submit this Affidavit in support of a criminal complaint charging TEJEDA, ▮▮▮ and ▮▮▮▮▮ with conspiracy to distribute heroin, in violation of 21 U.S.C. §846.

//
//
//
//

6

## CONCLUSION

Based on all of the foregoing, I respectfully submit that there is probable cause to believe that Jose Alberto TEJEDA TURBI, a/k/a "Chillin," ████████████████, and ████████████ conspired to distribute heroin, in violation of 21 U.S.C. §846.

Respectfully submitted,

Lise Baillargeon
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on May 30, 2014:

HONORABLE JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE

7